E-FILED
Monday, 08 May, 2006 11:50:50 AM
Clerk, U.S. District Court, ILCD

Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District |
|---|---|

| | |
|---|---|
| Name (under which you were convicted): *Greigory Holmes* | Docket or Case No.: ~~97-CF-1150~~ 06-2090 |

| | |
|---|---|
| Place of Confinement: *Menard C.C.* | Prisoner No.: *K04785* |

Petitioner (include the name under which you were convicted)      Respondent (authorized person having custody of petitioner)

*Greigory L. Holmes* . v. *Alan Uchtman/Warden*

The Attorney General of the State of *Lesa Madigan*

**FILED**

### PETITION

**MAY 0 8 2006**

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:
    *Macon County Sixth Judicial Circuit of*
    _____

    (b) Criminal docket or case number (if you know): _____

2.  (a) Date of the judgment of conviction (if you know): *December 23, 1997*
    (b) Date of sentencing: *Septmeber 3, 1998*

3.  Length of sentence: *110 years*

4.  In this case, were you convicted on more than one count or of more than one crime? Yes ☒ No ☐

5.  Identify all crimes of which you were convicted and sentenced in this case: *1 Count of armed violence, 2 Counts of home invasion together and 9 Counts of aggravated Criminal Sexual assault*

6.  (a) What was your plea? (Check one)

    (1)   Not guilty ☒          (3)   Nolo contendere (no contest) ☐

    (2)   Guilty ☐              (4)   Insanity plea ☐

    (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____
    *(Not Applicable)*
    _____

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury ☒        Judge only ☐

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

Yes ☐  No ☒

8.   Did you appeal from the judgment of conviction?

Yes ☒  No ☐

9.   If you did appeal, answer the following:

(a) Name of court: _Appellate Court of Illinois Fourth Judicial District_

(b) Docket or case number (if you know): _No. 4-98-0768_

(c) Result: _denied_

(d) Date of result (if you know): _Apr. 28, 2000_

(e) Citation to the case (if you know): _N/A_

(f) Grounds raised: _see pages 6 & 7_

(g) Did you seek further review by a higher state court?    Yes ☒  No ☐

If yes, answer the following:

(1) Name of court: _Supreme Court of Illinois_

(2) Docket or case number (if you know): _NO. 89519 or No 4-98-0768_

(3) Result: _denied_

(4) Date of result (if you know): _July 5, 2000_

(5) Citation to the case (if you know): _N/A_

(6) Grounds raised: _see page 8_

(h) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☒  No ☐

If yes, answer the following:

(1) Docket or case number (if you know): _No. 4-98-0768_

Page 4

(2) Result: _denied_

(3) Date of result (if you know): ___N/A___

(4) Citation to the case (if you know): ___N/A___

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

Yes ☒ No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _Circuit Court of the Sixth Judicial Circuit Macon County, Illinois_

(2) Docket or case number (if you know): _No. 4-02-0811_

(3) Date of filing (if you know): _12/21/2000_

(4) Nature of the proceeding: _Petition for Post Conviction_

(5) Grounds raised: _Violated of the Apprendi_

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ☒ No ☐

(7) Result: _denied_

(8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _Circuit Court of the Sixth Judicial Circuit Macon County, Illinois_

(2) Docket or case number (if you know): _No. 4-00-0962_

(3) Date of filing (if you know): ___N/A___

(4) Nature of the proceeding: _Collateral Attack_

(5) Grounds raised: _Gregory Holmes's consecutive sentence totaling 110 years are void, and must be modified to a total not exceeding sixty years, the maximum authorized by law._

_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ☒    No ☐

(7) Result: _denied_____

(8) Date of result (if you know): _1/29/2003_____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____N/A_____

(2) Docket or case number (if you know): ____N/A_____

(3) Date of filing (if you know): _____N/A_____

(4) Nature of the proceeding: _____N/A_____

(5) Grounds raised: _____N/A_____
_____N/A_____
_____N/A_____
_____N/A_____
_____N/A_____
_____N/A_____
_____N/A_____
_____N/A_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?    Yes ☐    No ☒

(7) Result: _____N/A_____

(8) Date of result (if you know): _____N/A_____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1)  First petition:      Yes ☒    No ☐

(2)  Second petition:   Yes ☒    No ☐

(3)  Third petition:     Yes ☐    No ☐

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:
_____N/A_____
_____
_____

## Appellate Court of Illinois Grounds raise
### Direct Appell

1. The prosecutor's elicitation of Greigory Holmes

   Assertion of his right to Silence was reverible

   error.

2. The defendant was denied his sixth amendment

   right to the Effective assistance of counsel where the

   Defendant's trial attorney (A) Failed to object to the

   Prosecutor's improper and inflammatory Racial Comments,

   (B) Failed to request a competency Hearing for Jonathon

   Wedd.

3. The state did not prove Greigory Holmes Guilty Beyond a

   Reasonble Doudt of count XIII, aggravated criminal sexual

   assault.

4. The court erred in denying the defendant's motion to

   Substition Judge John Davis, Following Conviction, but prior

   to sentencing, when Judge Davis made Comment's about

   the defendant's likely sentence at a Political dinner.

5. The Trial Court erred when it sentenced Greigory Holmes to an Excessive sentence of 115 years imprisonment.

6. This cause should be remanded for re-sentencing Because public Act 88-680, which increased penalties for Armed violence with a category I weapon, violates the Single subject rule of the Illinois Constitution.

7. Greigory Holmes sentence of imprisonment must be Credited one additional day of sentence credit as authorized by 730 ILCS 5/5-8-7 (b) (WEST 1998).

## Supreme Court of Illinois, Direct Appeal Grounds

A. The court erred in denying the defendant's motion to substitute judge John Davis, following conviction, but prior to sentencing, when judge Davis made comments about the defendant's likely sentence at a political dinner.

B. The prosecutor's elicitation of Greigory Holmes's assertion of his right to silence was reversible error.

C. The defendant was denied his sixth amendment right to the effective assistance of counsel where the defendant's trial attorney (I) Failed to object to the prosecutor's improper and inflammatory racial comments; (II) Failed to request a competency hearing for Jonathon Webb.

D. The state did not prove Gregory Holmes guilty beyound a reasonable doubt of Count XIII, Aggravated criminal sexual assault.

E. The trial court erred when it sentenced Greigory Holmes to an excessive sentence of 115 years imprisonment.

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

<u>CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

GROUND ONE: *Petitioner constitutional rigths were Violated under the sixth Amendment*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): *To The effective assistance of counsel where the defendant's trial attorney (A) Failed to object to the prosecutor's improper and inflammatory racial comment; (B) Failed to request a competency hearing for Jonathon Webb.*

(b) If you did not exhaust your state remedies on Ground One, explain why: *Gregory Holmes was told by counsel that the iss would not stand up in Supreme Court of the U.S beause the Appellate and Illinois Supreme Court have already demiss it*

(c) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒  No ☐

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

(d) Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?         Yes ☐   No ☒

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____ *(Not Applicable)*

Name and location of the court where the motion or petition was filed: _____

_____ *(Not Applicable*

Docket or case number (if you know): _____ *N/A* _____

Date of the court's decision: _____ *N/A* _____

Result (attach a copy of the court's opinion or order, if available): _____

_____ *N/A* _____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐   No ☒

(4) Did you appeal from the denial of your motion or petition?

Yes ☐   No ☒

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☒

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____ *N/A* _____

Docket or case number (if you know): _____ *N/A* _____

Date of the court's decision: _____ *N/A* _____

Result (attach a copy of the court's opinion or order, if available): _____

_____ *N/A* _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: *Gregory Holmes was told by counsel the issue is only a direct appeal issue.*

_____

_____

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

GROUND TWO: *Petitioner constitutional rights were Violated under the V, VI and XIV Amendment*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): *The trial court erred when the court imposed consecutive sentences based on factors that was not proven by the jury beyond a reasonable doubt.*

(b) If you did not exhaust your state remedies on Ground Two, explain why: _G_____

_N/A_

(c) Direct Appeal of Ground Two:

   (1) If you appealed from the judgment of conviction, did you raise this issue?

      Yes ⬜   No ⬜

   (2) If you did not raise this issue in your direct appeal, explain why: _Greigory Holmes was toled by counsel that the issue would not stand up in_

(d) Post-Conviction Proceedings:

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

      Yes ☒   No ⬜

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: _Post-Conviction_

   Name and location of the court where the motion or petition was filed: _Circuit Court of the Sixth Judicial Circuit Macon County, Illinois_

   Docket or case number (if you know): _No. 4-02-0811_

   Date of the court's decision: _12/2/2000 A. Aug 19,2003_

   Result (attach a copy of the court's opinion or order, if available): _denied to see opinion see page 58_

   (3) Did you receive a hearing on your motion or petition?

      Yes ☒   No ⬜

   (4) Did you appeal from the denial of your motion or petition?

      Yes ☒   No ⬜

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

      Yes ☒   No ⬜

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed: _Illinois Supreme Court/ Supreme Court Building Springfield, Illinois 62701_

Docket or case number (if you know): No. 4-02-0811

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): N/A the opinion/ denied.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

N/A

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: Supreme Court of the United States / Petition For A Writ of Certiorri

GROUND THREE: Petitioner contitional rights were violated under the V,VI and XIV Amendment

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.): Gregory Holmes's consecutive sentence totaling 110 years are void, and must be modified to a total not exceeding sixty years, the maximum authorized by law.

(b) If you did not exhaust your state remedies on Ground Three, explain why: All state remedies exhaust on this Ground

(c) Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☒

(2) If you did not raise this issue in your direct appeal, explain why: It was a Collateral Attack

Page ~~12~~ 13

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?        Yes ☒   No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _Collateral Attack upon a Void Judgment_

Name and location of the court where the motion or petition was filed: _For the Sixth Judicial Circuit Macon County Illinois_

Docket or case number (if you know): _No. 4-00-0962_

Date of the court's decision: _JAN-29-2003_

Result (attach a copy of the court's opinion or order, if available): _denied to see opinion see page 63_

(3) Did you receive a hearing on your motion or petition?

    Yes ☒   No ☐

(4) Did you appeal from the denial of your motion or petition?

    Yes ☒   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☒   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _Supreme Court of Illinois/Supreme court Building Springfield, Il 62701_

Docket or case number (if you know): _No. 4-00-0962_

Date of the court's decision: _October 6, 2004_

Result (attach a copy of the court's opinion or order, if available): _denied to see opinion page 77_

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _N/A_

**(e) Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _A petition for writ of Certiorari in the Supreme Court of the United States_

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐   No ☒

(4) Did you appeal from the denial of your motion or petition?

Yes ☐   No ☒

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☒

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this
issue: _Gregory Holmes was told by counsel_
_the issue is only a direct appeal issue._

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative
remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

GROUND ~~Five~~ _Four_  _Petitioner constitutional rights were_
_violated under the V, XIV Amendment_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_The prosecutor's Elicitation of Gregory Holmes's_
_assertion of his right to silence was Reversible_
_error._

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _Gregory_
_Holmes was told by counsel that the issue would not_
_stand up in Supreme Court of the U.S because the Appellate_
_and "Illinois Supreme Court have already demiss it._

(c) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☒   No ☐

    (2) If you did **not** raise this issue in your direct appeal, explain why: _____

    _____

    _____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a
state trial court?

        Yes ☐   No ☒

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition: _____ _N/A_ _____

    Name and location of the court where the motion or petition was filed: _____
    _____ _N/A_ _____

    Docket or case number (if you know): _____ _N/A_ _____

    Date of the court's decision: _____ _N/A_ _____

    Result (attach a copy of the court's opinion or order, if available): _N/A_ _____
    _____ _N/A_ _____
    _____ _N/A_ _____

    (3) Did you receive a hearing on your motion or petition?

        Yes ☐   No ☒

    (4) Did you appeal from the denial of your motion or petition?

        Yes ☐   No ☒

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☐   No ☒

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _(Not Appliable)_

    _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: *It was not a post-constitutional petition, told by counsel   It was not post-conviction toled by Appealate Counsel*

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

GROUND ~~THREE~~ 5: *Petitioner contitutional rigths were Violated under the V, VI XIV Amendment*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): *The state did not prove Gregory Holmes guilty beyond a reasonable doubt of count XIII, aggravated criminal sexual assault.*

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: *Gregory Holmes was told by counsel that the issue would not stand up in Supreme Court of the U.S beause the Appellate and Illinois Supreme Court have already demiss it.*

(c) Direct Appeal of Ground Three:

   (1) If you appealed from the judgment of conviction, did you raise this issue?

   Yes ☒ No ☐

   (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    Yes ☐  No ☒

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____ N/A _____

Name and location of the court where the motion or petition was filed: _____ N/A _____

_____ N/A _____

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available): _ N/A _

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐  No ☒

(4) Did you appeal from the denial of your motion or petition?

Yes ☐  No ☒

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐  No ☒

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____ N/A _____

N/A

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available): _ N/A _

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: It was not a post-conviction petition, toled by counsel

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

Page 18

GROUND FOUR: *Petitioner constitutional rigths were Violated under the V, VI and XIV Amendment*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*The trial court erred when it sentenced Greigory Holmes to an excessive sentence of 115 years imprisonment.*

(b) If you did not exhaust your state remedies on Ground Four, explain why: *Greigory Holmes was told by counsel that the issue would not stand upin Supreme Court of the U.S. beause the Appellate and Illinois Supreme Court have already demiss it.*

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒  No ☐

(2) If you did **not** raise this issue in your direct appeal, explain why: _____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?        Yes ☐ No ☒

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____ *N/A* _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____ *N/A* _____

Date of the court's decision: _____ *N/A* _____

Result (attach a copy of the court's opinion or order, if available): *N/A*

*N/A*

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐  No ☒

(4) Did you appeal from the denial of your motion or petition?

Yes ☐  No ☒

Page ~~#~~ 19

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐ No ☒

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ___N/A_____

Docket or case number (if you know): ___N/A_____

Date of the court's decision: ___N/A_____

Result (attach a copy of the court's opinion or order, if available): _____
___N/A_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: Gregory Holmes was told by counsel the issue is only a direct appeal issue.

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: It appeal to the Supreme court of Illinois as a state remede.

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?     Yes ☒ No ☐

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: ___N/A_____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: yes see page 20/ Greigory Holmes was told by ~~conse~~ conusel that would not stand in court.

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?     Yes ☐ No ☒

<u>Grounds that was not presented in any Court</u>

1. The trial court denied Greigory Holmes $V$ & $XIV$

Amendment process when starch-can was not finger print and not brogth into trial, that would pr. have prove defendant innocent if it was presented.

2. The trial court denied Greigory Holmes his $XIV$

Amendment when the witness testimony was inconsistent with defendant idenitiy of his shoes and Shoe lace(I) defendant shoes was blue Nike M.J with big blues shoe lace (II) defendant shoes was red Nike M.J. with thin red Shoe lace with white stripe.

3. The trial court denied defendant of rights $V$, $VI$ & $XIV$ Amendment when he was made to go to trial with a prejudice jury(I) defendant was found guilty prejudicely due to the fact they had similar acts to defendant case done to them.

Page ~~28~~ 21

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? ~~Yes~~ No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____ *N/A* _____

_____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: *Head Public Defender Jerry Finney*

(b) At arraignment and plea: *Assistant Public Defender Bradford A. Rau*

(c) At trial: *Assistant Public Defender Bradford A. Rau*

(d) At sentencing: *Assistant Public Defender Bradford A. Rau*

(e) On appeal: *Assistant Public Defender's Ms Cathrine K. Hart &*

(f) In any post-conviction proceeding: *Appellate Assistant Deputy Jeffrey D. Foust*

(g) On appeal from any ruling against you in a post-conviction proceeding: *Appellate Assistant Defender Martin J. Ryan*

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ☐   No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____ N/A _____

_____ N/A _____

(b) Give the date the other sentence was imposed: _____ N/A _____

(c) Give the length of the other sentence: _____ N/A _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    Yes ☐  No ☒

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.* _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —

(continued...)

Page ~~28~~ 23

Therefore, petitioner asks that the Court grant the following relief: *Petitioner ask this hornable to grant rehearing or a immediate release*

or any other relief to which petitioner may be entitled.

*To have sentence change to a 20 year setence.*

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on *April 4, 2006* _____ (month, date, year).

Executed (signed) on *Apr 4, 2006* _____ (date).

_____
Signature of Petitioner

---

*(...continued)

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition. _____

_____

_____

IN FORMA PAUPERIS DECLARATION

[Insert appropriate court]

* * * * *

Macon County Sixth Judicial Court
Circuit of Illinois

State of Illinois Appellate Court
Fourth District

Illinois Supreme Court
Supreme Court Building

&

Supreme Court of the United States
Office of the Clerk

Washington, DC 20543-0001

NO. 4-98-0768

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT



FILED

APR 28 2000

Clerk of the
Appellate Court, 4th D

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| GREGORY HOLMES, | ) | No. 97CF1130 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John L. Davis, |
| | ) | Judge Presiding. |

ORDER

A jury convicted defendant Gregory Holmes of three counts of home invasion (720 ILCS 5/12-11 (West 1996)), one count of armed violence (720 ILCS 5/33A-2 (West 1996)), and nine counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(1) (West 1996)). The trial court sentenced him to a total of 115 years in prison. He appeals, arguing that (1) the prosecutor's elicitation of his assertion of his right to remain silent was reversible error; (2) he was denied a fair trial due to (a) improper racial remarks made by the prosecutor, (b) the trial court's failure to evaluate the competency of a child witness, and (c) trial counsel's incompetency in failing to object to the racial remarks and make a competency objection to the testimony of the child witness; (3) the State failed to prove him guilty beyond a reasonable doubt as to count XIII of the information, charging aggravated criminal sexual assault; (4) the trial court erred in denying his motion for substitution of judge, where prejudicial remarks were made by the trial judge at a political function concerning defendant's likely

sentences; (5) his combined sentences of 115 years in prison are excessive; (6) he is entitled to one additional day of sentence credit; and (7) the cause should be remanded for resentencing on his armed violence conviction because Public Act 88-680 (Pub. Act 88-680, art. 50, §50-5, eff. January 1, 1995 (1994 Ill. Laws 2750, 2832)), which increased the minimum penalty for armed violence, violates the single subject rule of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)). We affirm in part, vacate in part, and remand.

## I. BACKGROUND

Defendant and codefendant Donte Lofton were tried together on 11 counts of aggravated criminal sexual assault, 4 counts of home invasion, 2 counts of armed robbery, and 1 count of armed violence. The charges stemmed from events that took place at two separate homes in the early morning hours of August 20, 1997. L.C. testified that she resides at 917 East Henderson in Decatur. She went to bed around 12:15 a.m. on August 20, 1997. She and her five-year-old daughter were in the house. She awoke to find defendant and Lofton in her bedroom. Defendant was wearing a blue bandanna on the lower part of his face and Lofton was wearing a ski mask. L.C. could see the outline of Lofton's braided hair through the ski mask. Defendant pulled her out of bed by her hair. He had a handgun. Lofton had previously visited L.C.'s house. She knew him by the nicknames of "Tay" and "D-Money." She had never seen defendant.

The men stated they "wanted the money." She told them she did not have any money. Defendant pulled her by the hair into the living room, where she was forced to take off her clothes and

- 2 -

lie on the floor. Lofton was going through her drawers at that time. Defendant held the gun to her head while she lay nude on the floor. He told L.C. that she was a "nasty bitch" and that she must be "horny" because her boyfriend was in jail.

Defendant placed the gun in her mouth and told her to lick it. She did as she was told. Lofton came into the living room, called her a "lying bitch," and told her he knew she had some money for her boyfriend's bond. She again said she had no money. Defendant began to "stomp" her in the head with his foot. She was still on the floor. The men again called her a "lying bitch" and said they would kill her daughter if she did not give them money. Lofton pulled out a screwdriver and handed it to defendant. He told defendant to "fuck that bitch." Defendant told her to spread her legs. He then "stuck" the screwdriver into her vagina for approximately a minute. Defendant pulled her by the hair back into her bedroom. Lofton continued to search her bedroom and the bathroom for money. When the search ended, the men took her telephone, pager, and a box containing a Sony Play Station. She was dragged by her hair down the back stairs and told to lie down on the concrete stairs and pray, because they were going to shoot her in the back of the head. She started praying, and they told her to pray louder. They opened the door and ran out of the house. She heard car doors close and a car speed away. She did not see the car. She ran across the street to a neighbor's house and called the police.

L.C. testified that she identified defendant and Lofton in a police lineup after hearing them speak. She had scars on her head from the attack and suffered from "trauma headaches" for

- 3 -

approximately three weeks. When she first talked to the police about what happened, she did not give them the perpetrators' names. She was very upset and did not look at a watch or clock during the incident or at the neighbor's house.

No latent fingerprints were found in L.C.'s house. Officers collected a telephone, green screwdriver, and hairbrush. Tire tracks were found in the alley behind L.C.'s house, but no castings were taken.

A.W. testified that on August 20, 1997, she lived at 2002 North Lowber in Decatur. Her sister, T.W., also lived at the house, along with T.W.'s four-year-old daughter. T.J., A.W.'s boyfriend, lived at the house off and on. G.W., T.W.'s boyfriend, was in the house that night, along with two other children, M.W. and J.W. A.W. went to bed at 10:30 p.m. on August 19. About 12:30 or 1 a.m. on August 20, A.W. was awakened by the sound of the front door being kicked in. She did not actually look at a clock to see the exact time. She went downstairs and saw defendant with a handgun pointed at T.W.'s head. Lofton was also there. She had been introduced to Lofton and defendant the week before by her then roommate, Amy Carney. A.W. dated defendant during a temporary breakup with T.J. Lofton's nicknames were "Tay" and "D-Money."

Defendant had a blue bandanna over his mouth and nose. Lofton was wearing a ski mask. A.W. could see his braided hair sticking up under the mask. Defendant asked if anyone else was upstairs, and A.W. said T.J. was. Defendant took A.W. upstairs, pulling her by the hair, and holding the gun to her head. After A.W., T.J., and defendant were in the living room, Lofton ordered all the adults to take off their clothes. A.W. and T.W. were

- 4 -

ordered to perform oral sex on each other simultaneously. A.W.'s mouth made contact with T.W.'s vagina and T.W.'s mouth made contact with A.W.'s vagina. This went on for approximately 10 minutes. At one point, one of the men hit A.W. on the head and told her she was not "doing it right." M.W. and J.W. were seated in the living room while this was taking place. Defendant sat in a chair about two feet away from A.W. and T.W., holding the gun.

One of the men then ordered T.J. to lick A.W.'s anus. T.J. complied and his mouth came in contact with her anus. Defendant stood right above them. Lofton called G.W. out of T.W.'s bedroom, and he also was ordered to take off his clothes. Lofton took T.W. into her bedroom. T.W.'s daughter was there. A.W. heard T.W. yell, "Not in front of my daughter, please." Still holding the gun, defendant told G.W. to lick A.W.'s vagina. His mouth came in contact with her vagina. Lofton brought T.W. back into the room and she was ordered to perform oral sex on G.W. A.W. was ordered to perform oral sex on T.J. Her mouth made contact with T.J.'s penis. After this went on for five minutes, A.W. was hit in the head and told she was not "doing it right." Defendant told T.W. she was not "doing it right" and hit her in the side of the head with the gun. T.W. was crying and saying, "Please. No."

A.W. testified that T.J. was ordered to perform oral sex on her and did so. G.W. was also ordered to perform oral sex on her and did so. Defendant and Lofton took $80 in cash from T.W., her pager, and A.W.'s pager. Before they left, the men forced all the adults to lie face down on the floor. They said that if anyone got up off the floor or looked out the window, they would all die. A.W. did not see the men leave. After they left, the adults and

children got into T.W.'s van and drove to Carney's house, as A.W.'s house had no phone. Carney had moved out of A.W.'s house on August 19, 1997. She was Lofton's former girlfriend. It was 1 a.m. when A.W. looked at a clock at Amy's house. She and the other alleged victims were hysterical, crying, and shaking. G.W. was bleeding from the head and T.W. from the face. Although Carney did not want them to come in, A.W. pushed her way in and called the police. The group met the officers at a nearby gas station. Later that morning, A.W. identified defendant and Lofton in a showup.

A.W. testified that two weeks prior to the incident, T.W. had a disagreement with defendant and Lofton. The men spent a considerable amount of time at A.W.'s house after they were first introduced to her. T.J. and defendant argued on one occasion when defendant was at A.W.'s house and T.J. came over uninvited.

T.W. testified that she was in bed with G.W. and her daughter when she heard the front door being kicked in. She looked at the clock and it was "right around" 1:30 a.m. When she went to her bedroom door, an intruder struck her in the face, held a gun to her head, and ordered her to strip. One intruder wore a ski mask, and the other wore a scarf over his mouth and nose. She recognized the men as defendant and Lofton. They had previously been social guests at the house, but T.W. had asked them to leave because she suspected them of stealing money from the table beside her bed. Lofton demanded money while she stripped. All the adults in the house were in the living room where they were ordered to perform oral sex on each other. Lofton forced T.W. into her bedroom and demanded money. Her daughter was awake on the bed. T.W. gave Lofton $80 from her coat pocket. Lofton told her to bend over the

- 6 -

page 5a

chair in her bedroom, and he inserted a curling iron in her vagina. T.W. asked Lofton not to do this in front of her daughter. Lofton said, "Shut up, bitch." T.W. was crying, and Lofton told her to stop being a baby and to quit crying. Lofton kept opening the curling iron while it was in her vagina. She asked him to stop, because her daughter was watching. At some point, she began to bleed. After Lofton took her back to the living room, she was forced to perform oral sex on G.W.

T.W. stated she gave her pager to Lofton, and defendant took G.W.'s coat. During this time, defendant called Lofton "D-Money." T.W. identified defendant and Lofton as the perpetrators in a showup. She sought medical help at a hospital emergency room. She bled from her vagina for about two weeks after the incident. She had a small cut and bruises on her face and experienced swelling. Her ear canal was swollen shut from being hit on the side of her face.

T.W. testified that approximately two weeks before the incident, Carney had invited defendant and Lofton to the house. T.W. did not know who they were. She left to run an errand and when she returned, some money she had placed on her nightstand was gone. She told Carney about it and that defendant and Lofton would have to leave. Two nights before the incident, the men were again at the house with Carney and A.W. T.W. told both women that defendant and Lofton would have to leave. The reason the alleged victims went to Carney's house after the incident was to learn defendant's last name and Lofton's name. Carney had moved out on August 19 with no notice.

T.J. testified that defendant ordered G.W. to lick T.J.'s

- 7 -

anus and he did so.   Defendant stood over them while this was
happening.  Lofton was searching the house.   T.J. saw Lofton stick
a curling iron inside T.W. while she was lying on the floor in
front of her bedroom door.   Defendant hit T.J. in his face and
side.   Lofton picked up a can of spray starch and hit G.W. in the
back of the head a couple of times.   Blood gushed from his head.
T.J. identified defendant and Lofton in a showup.

     Terry Balagna, the emergency room physician who treated
T.W., testified that T.W. had a small abrasion and some bruising to
the left side of her face.   She had some abrasions and scrapes
inside her mouth.   She also had bruising and swelling on the
outside of her vagina, as well as bruising and abrasions inside.
Balagna also treated G.W., who had bruising and swelling on his
left jaw area and a laceration about one-inch long on the back of
his head.   Five sutures were required to close the wound.

     Police officer Sean Trent testified that he videotaped
the crime scene at A.W.'s house.  He found a shoe imprint near the
doorknob on the outside of the front door.   The area around the
deadbolt lock had been pushed through and was splintered.   Blood
appeared to be on the floor and one wall of the living room.   Trent
also found blood in T.W.'s bedroom, as well as a curling iron with
a drop of blood on it.   He also observed what appeared to be blood
on a pair of white socks in the upstairs area.   Trent also took
each of the four adults separately to 434 Longview in Decatur,
where they each identified defendant and Lofton as the perpetra-
tors.   Trent testified that he did not seize the starch can he
found, nor was the scene processed for fingerprints.   The blood
stains were not preserved.

that's what I seen.

Q.  Is that the color you saw that morn-

ing?

A.  Yeah."

On cross-examination, J.W. was asked what side of the car he could see from the living room.  He said the car was in the driveway and he could see the back of the car.  He stated the car was backing out, and he saw the spot.  He thinks the car was pulled head first into the driveway.  J.W. saw a stop sign.  The man driving the white car stopped, but the "cops got him."  A.W. and T.W. called police from the house, and the police arrested the men in front of the house.

Police officer Neal Cline testified that he tried and failed to find latent fingerprints on several items in A.W.'s house.

Police officer Cody Moore testified that he spoke to defendant after he was taken into custody.  Moore advised defendant of his <u>Miranda</u> rights (<u>Miranda v. Arizona</u>, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)).  Defendant said he had been at 434 Longview most of the day on August 19, 1997.  He left at an unknown time with Lofton.  They walked to the Greenwood Apartments and then to an address on West King to visit a relative.  They then walked back to Longview, arriving at 10:45 p.m.  He stated he remained there until the police arrived the next morning.  Moore asked defendant if he had been on Lowber Street.  Defendant stated he did not know where that street was located.  When Moore told him that he had been identified by people who stated he had been on Lowber Street, defendant said they must have been confused.  The prosecu-

- 10 -

tor asked Moore if that was the complete interview he had with
defendant. Moore responded that defendant asked for an attorney,
and Moore took him to the county jail. Defense counsel's objection
to this last statement was overruled. Counsel's motion for a
mistrial was denied.

G.W.'s testimony was similar to that of the other alleged
victims. He testified that when he was ordered to lick T.J.'s
anus, his mouth did not come in contact with the anus; rather, his
mouth made contact with "[t]he cheek of [T.J.'s] butt." G.W.
identified defendant and Lofton by their clothing and shoes later
that day in a showup.

Candace Dickens testified that she has known defendant
and Lofton for six or seven months. She owns a white car that has
a rust spot on the passenger side near the taillight. She has
never allowed defendant or Lofton to use the car.

Police officer Jason Van Alstine testified that he
interviewed L.C. about what happened at her house. He did not see
any injuries. She appeared to be upset at the time of the
interview.

Dickens testified on defendant's behalf that at 10 p.m.
on August 19, 1997, she was at her mother-in-law's house at 459
Longview. Defendant came to the house about "eleven something."
Lofton was with him. They left after about 10 minutes and went to
Latoya T.J.' house on Longview. Dickens also went there about
midnight. She, her mother-in-law, Lofton, and Doris Nelson went to
the store in Dickens' car. They returned to Latoya's house 10
minutes later. Approximately 20 minutes later, Dickens, her
mother-in-law, and Nelson left. The time was approximately 12:30

- 11 -

or 12:45 a.m.  Defendant and Lofton are best friends and they are usually together.  She does not know where defendant and Lofton were after she left Latoya's house.

Matt Aukamp testified through an evidence deposition that he was a police officer for the City of Decatur on August 20, 1997. He conducted a search of the premises at 434 Longview.  He found no firearms, pagers, or leather coats.  He did not find any ski masks or scarves.

Laura Bernice Cooper, Dickens' mother-in-law, testified that defendant and Lofton stopped by her house on the night of August 19, 1997, around 10 or 11 p.m.  She saw them 20 or 30 minutes later at Latoya's house.  Cooper, Dickens, Nelson, and Lofton left about 20 minutes later and went to "Mr. B's."  They were gone approximately 15 or 20 minutes.  Between 12:30 and 12:45 a.m. on August 20, Cooper, Dickens, and Nelson left Latoya's house. Defendant and Lofton were still there watching televison.  Cooper admitted she told Detective Michael Applegate that she left Latoya's house for the final time between midnight and 12:30 a.m.

Nelson testified that after she walked Cooper and Dickens to Cooper's house around 12:45 a.m., she returned to Latoya's house.  Defendant and Lofton were still there.  She gave Latoya a "finger wave perm," which took "a while"; defendant and Lofton were sitting in the living room.  Nelson left Latoya's house a little after 2 a.m.  Defendant and Lofton were getting ready to eat tacos. Nelson got home at 2:36 a.m.  She lives with defendant's brother, who is her boyfriend.  She is close to defendant.  She has never heard anyone call Lofton by a nickname.  The car portrayed by photographs shown to Nelson by the prosecutor resembles Dickens'

car.

Latoya testified that defendant and Lofton left her house around 8:30 p.m. on August 19, 1997, and returned about 9 or 10 p.m. Lofton, Dickens, Cooper, and Nelson returned from Mr. B's at 11:30 p.m. Dickens, Cooper, and Nelson left Latoya's house around 1 a.m. Defendant and Lofton were in the living room. Nelson came back to do Latoya's hair. This took about 30 minutes. Latoya fixed tacos for defendant and Lofton. The police knocked on her door while she was fixing tacos. Defendant was wearing a blue shirt and black pants. Lofton was wearing a white shirt. Latoya does not know Lofton as "Tay" or "D-Money."

The jury convicted defendant as stated. He was sentenced on September 3, 1998. Prior to sentencing, defense counsel filed a motion for substitution of judge, alleging that the trial judge, John L. Davis, was prejudiced against defendant. The motion alleged that (1) according to a newspaper article, Judge Davis made certain public comments about the case on January 31, 1998; and (2) the matters set forth in the article indicate Judge Davis had prejudged defendant's posttrial motions. The motion for substitution attached an affidavit of defense counsel and a copy of an article from the State Journal-Register published on March 1, 1998.

In summary, the article stated that Judge Davis had spoken at a Jersey County Republican Lincoln Day dinner. The author of the article spoke to circuit judge Thomas Appleton, who was running against Judge Davis in the Republican primary for a seat on this court. Judge Appleton stated that Judge Davis told those at the dinner that he was "'looking forward'" in the next week to imposing "'a 75-year sentence on two young men who were

guilty of sexual assault and home invasion and some other felo-
nies.'" According to Judge Appleton, Judge Davis then said, "'It
will be with pleasure that I tell them that they have to [serve] 63
years, [8] months.'" The article noted that the truth in sentenc-
ing law requires convicts to serve 85% of their sentences for the
crimes committed.

The article quoted Judge Appleton as stating that it is
improper to talk publicly about a sentence that has not yet been
pronounced and that may be changed by evidence produced at
sentencing. In an interview prior to publication of the article,
Judge Davis denied that he said he would sentence the men to 75
years; rather, he claimed he stated that the minimum sentence under
the law was 75 years. Judge Davis claimed he did not prejudge the
men's sentences. He stated that in an "egregious" case like the
one he was talking about, he "would have no problem" imposing
"these sentences" and that he believed people are entitled to know
this about their judges. The article identified the men Judge
Davis referred to as defendant and Lofton. It noted that no
sentencing hearing had yet been held.

A hearing on defendant's motion was held before Judge
James A. Hendrian on July 7, 1998. Lee Plummer, an attorney
practicing in Jersey County, testified that he attended the Lincoln
Day dinner. Judge Davis' remarks lasted less than five minutes.
Judge Davis also touched upon other subjects during his speech. He
may have mentioned tort reform and mandatory sentencing. He also
expressed support for truth in sentencing. Plummer told the
reporter who wrote the newspaper article what he recalled about
Judge Davis' remarks.

- 14 -

Frank Yocom, sheriff of Jersey County, testified that he attended the Lincoln Day dinner. Judge Davis said that "he couldn't wait to get back home to sentence a couple of defendants [who] were charged with home invasion and a sexual assault to [75] years." The judge also spoke about truth in sentencing as to the number of years on the sentences, but Yocom did not recall the exact number of years. Yocom testified that Judge Davis spoke about other subjects during his speech, but Yocom did not recall the nature of those subjects. Judge Davis' comments about the sentencing "stuck in [his] mind because it pleased [him] what [Judge Davis] said." Yocom was not a supporter of either Judge Davis or Judge Appleton before or after the dinner. He did not speak to any reporters. Yocom does not believe Judge Davis mentioned the names of the defendants he was to sentence.

Judge Hendrian denied the motion, finding that defendant had failed to show that Judge Davis was predisposed to impose any particular sentence or that he would not listen to arguments on defendant's posttrial motion.

Defendant's posttrial motion was denied by Judge Davis on September 3, 1998. Thereafter, a sentencing hearing was held. Latoya testified that defendant is the father of her three children. Defendant is a good father, and he helped her around the house. He has never abused her or the children. He also helped his mother financially and helped her cook. His mother has a "mental problem." Defendant has a learning disability and was receiving supplemental security income. Latoya and defendant have lived together for four years. During that time, defendant did not have a job.

- 15 -

Thomas Wilson, defendant's brother, testified that defendant has helped their mother over the years by cleaning and running errands for her.

Stephanie Jones, a friend of defendant's, testified that defendant is a good father and son.

Defendant made a statement in allocution in which he maintained his innocence and stated he had "found the Lord."

The trial court found that the truth-in-sentencing law did not apply to defendant's sentences, based upon this court's decision in People v. Pitts, 295 Ill. App. 3d 182, 187, 691 N.E.2d 1174, 1178 (1998). The court then sentenced defendant as follows: (1) 15 years in prison on the armed violence conviction; (2) 10 years on each of the convictions for aggravated criminal sexual assault, to be served consecutive to each other and consecutive to the armed violence sentence; (3) a consecutive sentence of 10 years on the home invasion conviction involving L.C.; and (4) a concurrent sentence of 15 years on the home invasion conviction involving the other victims, for a total sentence of 115 years. Defendant was given 379 days' credit for time served. This appeal followed.

## II. ANALYSIS

### A. Testimony Concerning Defendant's Assertion of his Right To Remain Silent

In Doyle v. Ohio, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976), the Supreme Court of the United States held that the use for impeachment purposes of defendant's postarrest silence, after Miranda warnings had been given, violates the due process clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV, §1).

- 16 -

This rule, however, is not absolute.  In <u>People v. Lucas</u>, 132 Ill. 2d 399, 548 N.E.2d 1003 (1989), defendant was convicted of murder and sentenced to death.  He claimed on appeal that his due process rights had been violated by a reference in the testimony to the fact that he had asked for an attorney during questioning by police.  The prosecutor, in cross-examining defendant's mother, asked, "Now, after you--was that the only conversation you had with [defendant] then?"  <u>Lucas</u>, 132 Ill. 2d at 431, 548 N.E.2d at 1016. Defendant's mother replied, "No.  The investigators had told me that [defendant] had asked for a lawyer."  <u>Lucas</u>, 132 Ill. 2d at 431, 548 N.E.2d at 1016.  Defense counsel objected and moved for a mistrial.  He stated he did not want the testimony stricken or a curative instruction given, to avoid drawing the jury's attention to the statement.  The trial court sustained the objection, but denied the motion for mistrial on the bases that the prosecutor had not elicited the statement, it had been volunteered by the witness, and the defendant had not been prejudiced by it.  <u>Lucas</u>, 132 Ill. 2d at 431, 548 N.E.2d at 1016.  The supreme court held that the rule stated in <u>Doyle</u> applied to references in testimony to the fact that a defendant requested a lawyer following his arrest and <u>Miranda</u> warnings.  It also found that the reference to defendant Lucas' request for a lawyer did not constitute reversible error. The court noted the reference was not elicited by the prosecutor, but was volunteered by the witness.  Immediately after the statement was made, the trial court sustained defendant's objection and instructed the witness to make no further references to defendant requesting an attorney.  The prosecutor made no attempt to use defendant's request for an attorney to impeach him and did

not argue it as evidence.  The court also noted the overwhelming
evidence of defendant's guilt.  <u>Lucas</u>, 132 Ill. 2d at 432-33, 548
N.E.2d at 1016-17.

     Similar reasoning applies to the instant case.  Although
the trial court overruled defendant's objection, the statement by
Moore was not elicited by the prosecutor.  The prosecutor asked
Moore, "Is that the complete interview you had with [defendant]?"
Moore responded, "At that time he asked for an attorney and then I
took him to the Macon County [j]ail."  The prosecutor's question
called for a "yes" or "no" answer.  Moore's answer was
nonresponsive.  We further note that the prosecutor did not refer
to this statement in his closing argument or attempt to use it in
any way to impeach defendant.  Further, the evidence of defendant's
guilt was overwhelming.  Under these circumstances, we conclude
that the statement made by Moore did not deprive defendant of his
due process rights.

B. Prejudice to Defendant from Prosecutor's Racial Remarks and
   the Trial Court's Failure To Evaluate J.W.'s Competency

     Defendant alleges that his right to a fair trial was
prejudiced by remarks the prosecutor made concerning the race of
defendant, the alleged victims, and one of the police officers who
investigated the case.  Defendant acknowledges that trial counsel
did not object to any of the remarks and this issue was not
included in defendant's posttrial motion.  It has therefore been
forfeited for appellate review.  <u>People v. Laugharn</u>, 297 Ill. App.
3d 807, 810, 698 N.E.2d 219, 221 (1998).  Issues raised for the
first time on appeal will be reviewed only if the record reflects
plain error.  Plain error exists when an error deprives the

- 18 -

defendant of a fair trial, or any substantial error occurs and the evidence is closely balanced. Laugharn, 297 Ill. App. 3d at 810-11, 698 N.E.2d at 222.

In the alternative, defendant argues that his trial counsel was ineffective for failing to object to these alleged errors and include them in defendant's posttrial motion. To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors, a reasonable probability exists that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984). A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. We note that if defendant has not satisfied one component of the Strickland test, the reviewing court need not consider the other component. People v. Beals, 162 Ill. 2d 497, 506, 643 N.E.2d 789, 794 (1994).

### 1. Prosecutor's Alleged Improper Remarks

Defendant complains of the following comments made by the prosecutor.

a. During the prosecutor's opening statement, he told the jury that some of the alleged victims were white and some were black.

b. During his examination of J.W., the prosecutor asked him how many people came into A.W.'s house. J.W. said there were two. The prosecutor then asked whether the people were black or white. J.W. stated they were black.

- 19 -

c. The prosecutor asked G.W. whether any children were in the house the night of the attack. G.W. stated that a little boy was in a chair and a little girl was on the couch. The prosecutor asked what "color" the children were. G.W. replied that the boy was white and the girl was black.

d. During cross-examination of Dickens, the prosecutor asked if she recalled talking to Applegate on August 21, 1997. Dickens asked who Applegate was. The prosecutor replied that he is a white detective.

e. In his closing argument, the prosecutor told the jury that the trial consisted of two separate criminal episodes. The first was the attack on L.C. and the second was the attack at A.W.'s home. The prosecutor expressed his belief that both attacks were carried out by the same two people. In explaining his theory to the jury, the prosecutor noted there were similarities between the two attacks. He then explained in detail what those similarities were, stating in part:

> "And what are those similarities? There were two black men. The taller man in each episode had a blue scarf or bandana on the lower part of his face. In each episode the taller man was armed with the handgun. In each episode the shorter man had a ski mask on. *** There was forcible entry through the doors. Women were pulled around by the hair. Money was demanded at gunpoint. All the adults present were ordered to strip. Women were struck in the head. And this is the most unusual char-

- 20 -

acteristic of both crimes--the only sexual
assaults personally performed by the perpetra-
tors involved inserting an inanimate object
into a woman's vagina."

f. At another point in closing argument, the prosecutor
stated that T.J. had "committed the unpardonable sin of dissing
another young black male." This reference was to an argument T.J.
had with defendant prior to the night of the attack.

g. During closing argument, the prosecutor said:
"But the victims in this case aren't high[-]
profile people. The victims in this case
probably aren't even middle class. You saw
videotapes of the houses in which they lived.
The victims were black. The victims were
white. The victims had criminal records.
These victims weren't living the American
dream.

The problem with justice in America has
been, and often continues to be[,] that vic-
tims who get justice are often those who have
wealth. Victims who get justice are often
those who have a certain color of skin. Those
victims on the bottom of the socioeconomic
ladder are often left to scrounge for the few
morsels of justice scattered on the ground.
Although [the alleged victims] may have seemed
like easy marks to [defendant and Lofton],
people whom [defendant and Lofton] thought no

- 21 -

jury would take an interest in, I submit that
to them, justice is due."

The evidence in the instant case was not closely
balanced.  In fact, the evidence was more than sufficient to allow
the jury to convict defendant, nor did the prosecutor's references
to race deprive defendant of a fair trial.

Counsel should be very careful about making racial
references during the course of a trial.  However, this does not
mean that all such references require reversal.  People v.
Bramlett, 211 Ill. App. 3d 172, 182, 569 N.E.2d 1139, 1147 (1991).
They must be examined in their entirety, and the comments must be
placed in context.  People v. Campbell, 264 Ill. App. 3d 712, 736,
636 N.E.2d 575, 592 (1992).

The prosecutor's comment in his opening statement about
some of the alleged victims being black and some white was merely
descriptive.  Moreover, the jury could see the race of the
individuals, as they all testified.  Further, the jury was
instructed by the trial court that opening statements did not
constitute evidence in the case.

The reference to the perpetrators' race in the prosecu-
tor's examination of J.W. also was not prejudicial.  This question
was asked for identification purposes and was not improper.

The prosecutor's question to G.W. concerning the race of
J.W. and the young girl at A.W.'s home served no valid purpose.
However, we fail to see how defendant was prejudiced by it.  As the
evidence showed, the alleged victims were of different races.  This
was not a case of black violence on exclusively white victims or
white violence on exclusively black victims.  Were this true,

- 22 -

unnecessary references to race would carry more weight. Defendant makes no showing as to how he was prejudiced by the prosecutor's question to G.W.

The reference to Applegate's race in the prosecutor's questioning of Dickens was intended to help Dickens recall which detective she had talked to. We find nothing improper about this question.

Defendant argues that the prosecutor's references to race in his closing argument were gratuitous and prejudicial. He cites People v. Brown, 170 Ill. App. 3d 273, 524 N.E.2d 742 (1988), in which the defendant was convicted of aggravated criminal sexual assault. One of his contentions on appeal was that the prosecutor impermissibly injected a racial element into the trial by noting that the victim was a black woman and suggesting the defense had tried to "cheapen" the idea that every person is entitled to the protection of the law, regardless of race. Prior to addressing this argument, the appellate court had found that other trial errors required reversal. Although not required to do so, the court addressed the argument in the event the question arose on retrial. The court noted that the prosecutor had no valid reason to refer to the victim's race. However, the court did not state whether it considered this error to be reversible. Brown, 170 Ill. App. 3d at 283-84, 524 N.E.2d at 749. Brown has no applicability to our case.

In arguing to the jury that the same alleged perpetrators were responsible for the attacks on all the victims, the prosecutor detailed the similarities between the incidents. The prosecutor noted that both alleged perpetrators were black. This comment was

- 23 -

not improper, as it merely served to identify the alleged attackers in both incidents.  The prosecutor also stated in closing argument that T.J. had "committed the unpardonable sin of dissing another young black male."  This referred to a confrontation that occurred between T.J. and defendant a few days prior to the attack.   The reference merely suggested a motive for the attack on A.W., T.W., G.W., and T.J. and was not improper.

Most of the comments of which defendant complains were proper and served a legitimate purpose.  We note that the trial court instructed the jury that closing arguments did not constitute evidence in the case.  While we caution counsel to refrain from social commentary such as that engaged in by the prosecutor here in his closing argument, we conclude that neither those comments nor the other comments of which defendant complains deprived him of a fair trial.

As we find none of the prosecutor's comments to constitute reversible error, we conclude that defendant has failed to show that his trial counsel was ineffective for failing to object to these comments and raise the issue in defendant's posttrial motion.

## 2. Failure To Evaluate J.W.'s Competency

Defendant asserts that J.W.'s testimony was critical to the State's case, because he provided the only link between defendant and Lofton and a getaway car.  Defendant argues that J.W. was incompetent to testify as a witness due to his self-contradictory and "demonstrably false" testimony.

Section 115-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-14 (West 1996)) sets forth requirements for the

determination of a witness' competency:

> "(a) Every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter, except as provided in subsection (b).
>
> (b) A person is disqualified to be a witness if he or she is:
>
> (1) Incapable of expressing himself or herself concerning the matter so as to be understood, either directly or through inter-pretation by one who can understand him or her;  or
>
> (2) Incapable of understanding the duty of a witness to tell the truth.
>
> (c) A party may move the court prior to a witness' testimony being received in evidence, requesting that the court make a determination if a witness is competent to testify.   The hearing shall be conducted outside the pres-ence of the jury and the burden of proof shall be on the moving party."

The degree of a child's intelligence, rather than mere chronological age, determines the child's competency as a witness. People v. Ridgeway, 194 Ill. App. 3d 881, 884, 551 N.E.2d 790, 791 (1990).  If the witness is sufficiently mature to receive correct impressions by his senses, to recollect and narrate intelligently, and to appreciate the moral duty to tell the truth, he is compe-tent.   People v. Davis, 10 Ill. 2d 430, 436, 140 N.E.2d 675, 680

- 25 -

(1957).

In the instant case, J.W. answered questions about his age, schoolteacher's name, and his relationship to A.W. and T.W. His description of the two black men who broke into the house was consistent with that given by the adult victims. He described the white car and identified photos of Dickens' car as being similar to the car he had seen that night. He was confused about how the car was positioned in the driveway and where on the car the spot was located. He also stated that the police caught the attackers near the house, which was contrary to the evidence. However, such inconsistencies do not by themselves establish J.W.'s incompetency. Contrary to defendant's contentions, J.W.'s testimony was not so "fantastical" or so "lacking any basis in truth," that it should have been rejected out of hand. Accordingly, trial counsel was not ineffective for failing to make an objection to J.W.'s testimony on the basis of competence.

### C. Sufficiency of the Evidence Regarding Count of Aggravated Criminal Sexual Assault of T.J.

Defendant argues he was not proved guilty beyond a reasonable doubt of count XIII, aggravated criminal sexual assault of T.J. He points out that G.W. testified his mouth did not make contact with T.J.'s anus. Sexual penetration is established when it is proved beyond a reasonable doubt that one person's mouth makes contact, however slight, with another person's anus. 720 ILCS 5/12-12(f) (West 1996).

Where the sufficiency of the evidence is challenged, a reviewing court will not overturn a criminal conviction "unless the evidence is so improbable or unsatisfactory that there remains a

reasonable doubt of the defendant's guilt." <u>People v. Brown</u>, 185 Ill. 2d 229, 247, 705 N.E.2d 809, 817 (1998). The test to be employed on review is "'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" <u>People v. Howery</u>, 178 Ill. 2d 1, 38, 687 N.E.2d 836, 854 (1997), quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 318, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979).

While G.W. testified that he did not make such contact, T.J. testified that G.W., in fact, had "licked" his anus. Determinations as to the credibility of the witnesses, the weight to be given their testimony, and inferences to be drawn therefrom lie within the province of the jury. <u>People v. Bull</u>, 185 Ill. 2d 179, 204, 705 N.E.2d 824, 837 (1998). A reviewing court will not overturn a jury's verdict where the evidence is merely conflicting. <u>People v. DePue</u>, 229 Ill. App. 3d 615, 619, 593 N.E.2d 1115, 1118 (1992). We note that the testimony of one witness, including the victim, is sufficient to convict. <u>People v. Brink</u>, 294 Ill. App. 3d 295, 300, 690 N.E.2d 136, 139 (1998). The jury obviously found the testimony of T.J. to be more credible on this issue. We conclude that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt as to the aggravated criminal sexual assault of T.J.

### D. Motion for Substitution of Judge

Defendant argues that Judge Hendrian erred in denying his motion for substitution of judge. He alleges that the comments made by Judge Davis in his speech at the Lincoln Day dinner established that he was prejudiced against defendant.

A defendant may move at any time during the pendency of

- 27 -

his case for a substitution of judge for cause, supported by affidavit.    725 ILCS 5/114-5(d) (West 1996).    To prevail on a motion for substitution of judge, the defendant must show actual prejudice, animosity, hostility, ill will, or distrust directed toward the defendant.  People v. Walsh, 273 Ill. App. 3d 453, 456-57, 652 N.E.2d 1102, 1105 (1995).  The appropriate burden of proof the defendant bears is proof by a preponderance of the evidence. People v. Mercado, 244 Ill. App. 3d 1040, 1045-46, 614 N.E.2d 284, 287 (1993).  The trial court's determination on the motion will not be disturbed unless it is contrary to the manifest weight of the evidence.    Mercado, 244 Ill. App. 3d at 1047, 614 N.E.2d at 288.

Defendant cites Rule 63 of the Code of Judicial Conduct (Code) (155 Ill. 2d R. 63), which he believes Judge Davis violated. Rule 63(A)(6) states that a judge should abstain from public comment about a pending or impending proceeding in any court.  155 Ill. 2d R. 63(A)(6).  Rule 63(A)(1) provides in part that a judge should be unswayed by partisan interests.  155 Ill. 2d R. 63(A)(1). Defendant also believes Judge Davis violated Rule 62(A) of the Code (155 Ill. 2d R. 62(A)), which states that a judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.  While Judge Davis' comments did not refer by name to defendant or Lofton, we will assume for purposes of this discussion that the judge was referring to this case.

We disapprove of Judge Davis' comments concerning a pending case at the Lincoln Day dinner.  However, after reviewing the record and the evidence presented at the hearing on defendant's motion, we conclude that defendant did not establish by a prepon-

derance of the evidence that those comments demonstrated prejudice against him.    Judge Davis spoke about truth in sentencing and indicated his approval of that concept.    However, nothing in his remarks indicates that he had predetermined defendant's sentence and would not exercise his discretion at the sentencing hearing. Judge Davis' explanation of his comments in the newspaper article indicates that he believed the minimum total prison sentence defendant could receive under the law was 75 years.    Although at the sentencing hearing, the prosecutor and defense counsel agreed that the minimum sentence was 69 years, this discrepancy does not change our conclusion, because a defendant must show that the judge is _actually_ prejudiced against him.    If Judge Davis believed that 75 years in prison was the minimum sentence in defendant's case, then his statement to that effect does not show prejudice.    We therefore conclude that no error occurred in the denial of defendant's motion for substitution of judge.

### E. Unconstitutionality of Statute Increasing Penalties for Armed Violence with a Category I Weapon

Defendant contends that Public Act 88-680 violates the single subject requirement of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)).    That legislative enactment increased the minimum penalty for armed violence committed with a category I weapon from 6 years to 15 years in prison.

We need not address defendant's constitutional argument, because our supreme court has now held that Public Act 88-680 does violate the single subject rule of the constitution.    People v. Cervantes, 189 Ill. 2d 80, 94-95, 723 N.E.2d 265, 272 (1999).

A statute held to be unconstitutional is void _ab initio_.

- 29 -

<u>People v. McIntosh</u>, 305 Ill. App. 3d 462, 473, 712 N.E.2d 893, 901 (1999).  Since defendant's sentence is void, we must vacate his sentence and remand the cause to the trial court for resentencing on the armed violence conviction.

### F. Excessiveness of Sentence

Defendant next argues that the trial court abused its discretion by imposing an excessive sentence.  The trial court has broad discretion in fashioning an appropriate sentence.  A sentence within the statutory range will not be disturbed on review unless it is manifestly disproportionate to the nature of the case.  See <u>People v. Perruquet</u>, 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883 (1977) (sentence may not be altered absent an abuse of discretion).

Under the law at the time of sentencing, defendant was subject to a minimum of 15 years in prison on the armed violence conviction.  720 ILCS 5/33A-3(a) (West 1996).  He was subject to a minimum prison term of six years on each count of aggravated criminal sexual assault.  720 ILCS 5/12-14(d); 730 ILCS 5/5-8-1(a)(3) (West 1996).  The sentences on these counts were required to be made consecutive to each other (730 ILCS 5/5-8-4(a) (West Supp. 1997)) and consecutive to the armed violence conviction.  See <u>People v. Curry</u>, 178 Ill. 2d 509, 538, 687 N.E.2d 877, 891 (1997).  Defendant was also subject to a minimum term of six years in prison on the home invasion convictions.  720 ILCS 5/12-11(c); 730 ILCS 5/5-8-1(a)(3) (West 1996).  The prosecutor and defense counsel agreed that defendant was subject to a total minimum sentence of 69 years.

Defendant argues that the trial court failed to consider his (1) troubled youth, (2) lack of a violent criminal history, (3)

- 30 -

care and support of his mother, (4) young family, and (5) rehabili-
tative potential.   However, the trial court stated, in imposing
sentence, that it had considered all mitigating, as well as
aggravating, factors.   The trial court was not required to give
more weight to mitigating factors than to the seriousness of the
offense and the need to protect the public.  See People v. Mayoral,
299 Ill. App. 3d 899, 913, 702 N.E.2d 238, 248 (1998).  Here, given
defendant's depraved and heinous actions, we conclude the trial
court struck the proper balance in imposing the sentences.

### G. Extra Day of Sentence Credit

The trial court awarded defendant 379 days of credit
against his sentence for time served in jail.   Defendant argues
that he is entitled to one additional day of credit.   The State
does not disagree with this argument.   Accordingly, we order that
the judgment of conviction and sentence be amended to reflect that
defendant is entitled to a total of 380 days of sentence credit.

### III. CONCLUSION

Defendant's convictions are affirmed.   His sentences,
with the exception of the sentence on the armed violence convic-
tion, are affirmed.  The sentence on that conviction is vacated and
the cause remanded for resentencing thereon and for amendment of
the order of judgment and sentence to reflect a total of 380 days'
sentence credit.

Affirmed in part, vacated in part, and remanded with
directions.

GARMAN, J., with MYERSCOUGH and KNECHT, JJ., concurring.

E-FILED
Monday, 08 May, 2006 11:51:24 AM
Clerk, U.S. District Court, ILCD



STATE OF ILLINOIS

## APPELLATE COURT
### FOURTH DISTRICT
#### SUPREME COURT BUILDING
#### SPRINGFIELD 62701-1792

CLERK OF THE COURT
(217) 782-2586

RESEARCH DIRECTOR
(217) 782-3528

COUNSEL WILL PLEASE NOTE:

If you intend to appeal to the Supreme Court you must either
file your affidavit of intent in 21 days from the date of
this judgment [Rule 315(b)] or you must file a petition for
rehearing within 21 days (by _May 19 2000_ )
from the date of this judgment [Rule 367(a)].

IF NEITHER IS FILED our mandate will issue to the Circuit court
on _May 26 2000_ .

IF A PETITION FOR REHEARING IS FILED our mandate will issue 7
days after the order, if denied, if no affidavit of intent is
filed within those 7 days.

THIS TIME SCHEDULE DOES NOT SHORTEN THE TIME FOR FILING IN THE
SUPREME COURT !  It does prevent recall of a mandate.

We solicit your cooperation in this schedule so that we may
expedite our case load and issue our mandates as soon as possible.

ALSO PLEASE NOTE:   OPINIONS ONLY

Attached to the enclosed copy of the opinion in this case is a
cover sheet indicating the manner in which counsel will be listed
in the various reports of this opinion.  If your name is incorrectly
listed, or if a name has been incorrectly included or omitted,
please immediately convey that information to this office at
217-782-2586. Please also immediately inform the Reporter of
Decisions at 309-827-8513 so that a correct listing of counsel
can be made in the official and unofficial reports of this case.

Thank you.


DARRYL PRATSCHER, Clerk
Appellate Court
Fourth District

DP: ms

K-04785
Box 711    89519
Menard, IL 62259

**ILLINOIS SUPREME COURT**
**JULEANN HORNYAK, CLERK**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

**RECEIVED**

JUL 06 2000

**OFFICE OF THE STATE APPELLATE DEFENDER**
**SPRINGFIELD, ILLINOIS**

July 5, 2000

Ms. Catherine K. Hart
Assistant Appellate Defender
400 South Ninth Street, S#102
P. O. Box 5750
Springfield, IL 62705-5750

No. ¯89519 - People State of Illinois, respondent, v. Gregory
            Holmes, petitioner.  Leave to appeal, Appellate
            Court, Fourth District.

    The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.

    The mandate of this Court will issue to the Appellate Court

on July 27, 2000.

NO. 4-02-0811

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED

AUG 1 9 2003

CLERK OF THE
APPELLATE COURT, 4TH DIST.

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Macon County |
| GREGORY L. HOLMES, | ) | No. 97CF1130 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John K. Greanias, |
| | ) | Judge Presiding. |

## ORDER

A jury convicted defendant, Gregory L. Holmes, of two counts of home invasion (720 ILCS 5/12-11 (West 1996)), one count of armed violence (720 ILCS 5/33A-2 (West 1996)), and nine counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(1) (West 1996)). In September 1998, the trial court sentenced him to consecutive terms of imprisonment totaling 115 years. On direct appeal, this court affirmed all but one of his sentences. This court vacated the sentence on the armed violence conviction and remanded the cause for resentencing on that count. People v. Holmes, No. 4-98-0768 (April 28, 2000) (unpublished order under Supreme Court Rule 23). On remand, the trial court imposed a new 10-year sentence on the armed violence count, resulting in an aggregate consecutive sentence totaling 110 years' imprisonment.

In December 2000, defendant filed a postconviction petition, alleging only that his consecutive sentences violated Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). After counsel was appointed to represent

defendant, the State filed a motion to dismiss, which the trial court granted after a hearing.  Defendant appeals.

Appointed counsel, the office of the State Appellate Defender (OSAD), has filed a motion to withdraw as counsel under Pennsylvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), asserting that no issue of arguable merit warrants appeal.  In support of that assertion, OSAD relies upon People v. Wagener, 196 Ill. 2d 269, 283-86, 752 N.E.2d 430, 440-41 (2001), which held that Apprendi does not apply to consecutive sentences such as those imposed in this case.

The record shows service of OSAD's motion on defendant. On our own motion, we granted defendant leave to file additional points and authorities by May 5, 2003.  In response, defendant filed a motion in opposition to the motion to withdraw.  In it, he argues consecutive sentences are not readily distinguishable from extended-term sentences because consecutive sentences imposed for offenses committed during a single course of conduct in which no severe bodily conduct was inflicted constitute double punishment, which Apprendi forbids.

After examining the record, OSAD's motion, defendant's response, the State's brief, and defendant's reply, we affirm the trial court's judgment and grant OSAD's motion to withdraw as counsel on appeal.  As the State points out, the Supreme Court of Illinois's decision in Wagener is binding precedent upon this court despite defendant's claim that it was wrongly decided. This court is not free to ignore precedent, and this court has no

- 2 -

authority to overturn a decision of the supreme court.  <u>People v.</u>
<u>Moore</u>, 301 Ill. App. 3d 728, 732, 704 N.E.2d 80, 83 (1998).

Defendant rejoins that we may ignore <u>Wagener</u> because it
runs afoul prior precedent from <u>People v. King</u>, 66 Ill. 2d 551,
363 N.E.2d 838 (1977), which defendant contends stands for the
proposition that prejudicial double punishment occurs when
consecutive sentences are imposed for crimes arising from multi-
ple acts motivated by the same criminal objective.  Defendant's
argument is without merit.  While the supreme court made this
observation in <u>King</u>, it did so in reference to a statutory
sentencing scheme that no longer exists.  Compare Ill. Rev. Stat.
1973, ch.38, pars. 1005-8-4(a), (b), with 730 ILCS 5/5-8-4(a),
(b) (West 1996).  Under current sentencing law, which the General
Assembly was free to enact and to which defendant was subject,
consecutive sentences were expressly required for his sentences
on the armed violence conviction and each of the aggravated
criminal sexual assault convictions.

In addition, the supreme court's passing observation in
<u>King</u> was not its holding.  <u>King</u> stands for the proposition that a
defendant may not be convicted of more than one criminal offense
carved from the same physical act and, where multiple acts are
committed, multiple convictions are improper only if they are for
included offenses.  <u>Moore</u>, 301 Ill. App. 3d at 733, 704 N.E.2d at
83-84.  <u>King</u>, therefore, has no application to defendant's case,
and its holding is not in conflict with <u>Wagener</u>.

Finally, the State points out that the supreme court

- 3 -

recently held that <u>Apprendi</u> does not apply retroactively to cases on collateral review. <u>People v. De La Paz</u>, 204 Ill. 2d 426, 439, 791 N.E.2d 489, 497 (2003). Defendant contends, nevertheless that section 5-8-4(a) of the Unified Code of Corrections is facially unconstitutional because there exists no set of circumstances under which a jury could determine whether offenses were committed during a single course of conduct. This argument misses the mark. Because the supreme court in <u>Wagener</u> held that <u>Apprendi</u> does not apply to consecutive sentences, the statutory infirmity that defendant alleges does not apply to him either in theory or in fact. For these reasons, defendant's postconviction petition is without merit.

Accordingly, we grant OSAD's motion to withdraw and affirm the judgment of the Macon County circuit court.

Affirmed.

McCULLOUGH, J., with TURNER and APPLETON, JJ., concurring.

- 4 -

*page 62*

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**

97068

SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

December 3, 2003

Mr. Gregory L. Holmes
Reg. No. K-04785
P. O. Box 711
Menard, IL 62259

No.  97068 - People State of Illinois, respondent, v. Gregory
             L. Holmes, petitioner.  Leave to appeal, Appellate
             Court, Fourth District.

The Supreme Court today DENIED the petition for leave to
appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court
on December 26, 2003.

*page 16*

```
1997CF001130D 001
PEOPLE
VS.
HOLMES, GREGORY L                           ELLISON, DAVID PD
-----------------------------------------------------------------------
 ENTERED    JDG CR  TEXT                                          CHANGED  USER
-----------------------------------------------------------------------

 1/29/2003 TEP     Collateral Attack Upon a Void Judgment pursuant to 735 ILCS
                   5/2-140(f) examined.  Finding that Petitioner has misconstrued
                   730 ILCS 5/5-8-4 (c)(2) and 5/5-8-2.  The maximum aggregate
                   term authorized under 5/5-8-4(c)(2) is the aggregate of the
                   maximum extended terms authorized for the two most serious
                   felonies involved.  Defendant does not have to be eligible for
                   an extended term on any of the individual charges for the
                   aggregate maximum to apply.  The most serious charges in this
                   case are Class X offenses.  The maximum allowable term would
                   be 120 years.  The aggregate sentences imposed are below that
                   maximum.
                       The Collateral Attack is denied, as is the Motion for
                   Appointment of Counsel.
                   -------------------------------------------------------------
```

page 34

NO. 4-00-0962

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT



| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| GREGORY HOLMES, | ) | No. 97CF1130 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Theodore E. Paine, |
| | ) | Judge Presiding. |

ORDER

In December 1997, a jury convicted defendant, Gregory
Holmes, of three counts of home invasion (720 ILCS 5/12-11 (West
1996)), one count of armed violence (720 ILCS 5/33A-2 (West
1996)), and nine counts of aggravated criminal sexual assault
(720 ILCS 5/12-14(a)(1) (West 1996)).  In September 1998, the
trial court sentenced Holmes as follows: (1) 15 years in prison
on the armed-violence conviction; (2) 10 years on each of the
convictions for aggravated criminal sexual assault, to be served
consecutive to each other and consecutive to the armed-violence
sentence; (3) a consecutive sentence of 10 years on one home-
invasion conviction; and (4) a 15-year concurrent sentence on the
other home-invasion conviction, for a total of 115 years in
prison.  We affirmed Holmes's convictions but vacated his sen-
tence on the armed-violence conviction because the section of the
statute under which Holmes was sentenced was found unconstitu-
tional, and we remanded the cause for resentencing on that count.
<u>People v. Holmes</u>, No. 4-98-0768 (April 28, 2000) (unpublished

order under Supreme Court Rule 23).

On October 5, 2000, the trial court resentenced Holmes to 10 years' imprisonment for armed violence, with the sentence to run consecutively to the other counts. On October 12, 2000, the court denied Holmes's motion to reconsider sentence. On appeal, Holmes argues that his total sentence is unauthorized by law and therefore void because the total exceeds the maximum term authorized under section 5-8-2 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-2 (West 1996)) for the two most serious felonies involved. We disagree. The total aggregate authorized for Holmes's two most serious felonies was 120 years. After resentencing, the aggregate of the sentences imposed in this case was 110 years, which was less than what he could have received. We affirm.

## I. BACKGROUND

In December 1997, a jury convicted Holmes of three counts of home invasion (720 ILCS 5/12-11 (West 1996)), one count of armed violence (720 ILCS 5/33A-2 (West 1996)), and nine counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(1) (West 1996)). The trial court sentenced Holmes to 115 years' imprisonment. He appealed to this court, arguing (1) the prosecutor's elicitation of his assertion of his right to remain silent was reversible error; (2) he was denied a fair trial due to (a) improper racial remarks made by the prosecutor, (b) the court's failure to evaluate the competency of a child witness, and (c) trial counsel's incompetency in failing to object to the

- 2 -

racial remarks and make a competency objection to the testimony of the child witness; (3) the State failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault; (4) the court erred in denying his motion for substitution of judge where prejudicial remarks were made by the trial judge at a political function concerning Holmes's likely sentences; (5) his combined sentences of 115 years in prison are excessive; (6) he was entitled to one additional day of sentence credit; and (7) the cause should be remanded for resentencing on his armed-violence conviction because Public Act 88-680 (Pub. Act 88-680, §50-5, eff. January 1, 1995 (1994 Ill. Laws 2750, 2832)), which increased the minimum penalty for armed violence, violated the single-subject rule of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)).  We affirmed Holmes's convictions but vacated his sentence on the armed-violence conviction because the section of the statute under which defendant was sentenced was found unconstitutional, and we remanded the cause to the trial court for resentencing.  <u>People v. Holmes</u>, No. 4-98-0768 (April 28, 2000) (unpublished order under Supreme Court Rule 23).

On October 5, 2000, the trial court resentenced Holmes to 10 years' imprisonment for the armed-violence conviction, reducing his total sentence to 110 years.  Holmes filed a motion to reconsider sentence, alleging his sentence was excessive and the court did not properly consider factors in mitigation.  The court denied Holmes's motion.  This appeal followed.

- 3 -

## II. ANALYSIS

Holmes, convicted of all Class X felonies, argues his 110-year prison sentence violates section 5-8-4(c)(2) of the Unified Code (730 ILCS 5/5-8-4(c)(2) (West 1996)) because the term exceeds the sum of the maximum term authorized for the two most serious felonies under section 5-8-2 (730 ILCS 5/5-8-2 (West 1996). Holmes argues the trial court did not make specific findings of aggravation, and therefore, the maximum term for which he is eligible is 60 years under section 5-8-1(a)(1)(d)(3) of the Unified Code (730 ILCS 5/5-8-1(a)(1)(d)(3) (West 1996)). He argues the portion of his sentence in excess of 60 years is void. The State maintains that the plain language of section 5-8-2 dictates that the maximum term authorized for a Class X felony is 60 years, and under section 5-8-4(c)(2), the court was within its discretion to impose a prison sentence of up to 120 years. We agree with the State's interpretation and conclude that defendant does not have to be found eligible for an extended term for the extended-term maximum to apply.

The determination of the maximum sentence to which the trial court could properly sentence defendant turns on our interpretation of several sections of the Unified Code. The appropriate standard of review when interpreting statutes is <u>de novo</u>. <u>People v. Smith</u>, 342 Ill. App. 3d 289, 293, 794 N.E.2d 408, 411 (2003).

At the time of defendant's offenses, section 5-8-4(c)(2) of the Unified Code provided in relevant part that "the

- 4 -

aggregate of consecutive sentences shall not exceed the sum of
the maximum terms authorized under [s]ection 5-8-2 for the [two]
most serious felonies involved." 730 ILCS 5/5-8-4(c)(2) (West
1996). Section 5-8-2 provided, in relevant part, that "[a] judge
shall not sentence an offender to a term of imprisonment in
excess of the maximum sentence authorized by [s]ection 5-8-1 for
the class of the most serious offense of which the offender was
convicted unless the factors in aggravation set forth in para-
graph (b) of [s]ection 5-5-3.2 were found to be present." 730
ILCS 5/5-8-2(a) (West 1996). We interpret section 5-8-2, as
referenced in section 5-8-4(c)(2), as a limitation or cap on the
maximum aggregate sentence, which allows a sentence of up to 60
years for a Class X felony (730 ILCS 5/5-8-2(a)(2) (West 1996)).
After remand, defendant's sentence consisted of consecutive 10-
year terms for each of his 11 convictions, for a total of 110
years. The trial court did not sentence defendant in excess of
the maximum sentence authorized by section 5-8-1 for any of his
convictions, which were all Class X felonies and carried sen-
tences that "shall be not less than 6 years and not more than 30
years." 730 ILCS 5/5-8-1(a)(3) (West 1996). Therefore, his two
most serious offenses were Class X felonies, which, pursuant to
section 5-8-4(c)(2), authorized the court to impose an aggregate
consecutive sentence not to exceed 120 years. Defendant's
aggregate sentence totaled 110 years, fewer than 120.

        Section 5-8-2(a) prohibits a trial court from imposing
a sentence in excess of the maximum sentence authorized by

- 5 -

section 5-8-1 for the class of the most serious offense <u>unless</u>
the factors in aggravation set forth in paragraph (b) of section
5-5-3.2 (730 ILCS 5/5-5-3.2(b) (West 1996)) are found.  730 ILCS
5/5-8-2(a) (West 1996).  Aggravating factors need only be found
where the court wants to impose an extended-term sentence.
Therefore, Holmes's sentence would be excessive only if he had
received either an extended-term sentence or an aggregate sen-
tence in excess of 120 years.  In the present case, the court did
not impose extended-term sentences for any of Holmes's convic-
tions.  Instead, the court sentenced Holmes within the sentencing
ranges set forth in section 5-8-1.  Therefore, the court did not
have to consider the factors in aggravation that a court must
consider in determining whether a defendant is eligible for an
extended-term sentence.  Because the court imposed consecutive
sentences pursuant to section 5-8-4(c)(2), however, the court was
constrained to imposing sentences the aggregate of which did not
exceed the maximum terms authorized under section 5-8-2 for the
two most serious felonies.  See <u>People v. Tucker</u>, 167 Ill. 2d
431, 657 N.E.2d 1009 (1995).

In <u>Tucker</u>, 167 Ill. 2d at 436, 657 N.E.2d at 1012, the
supreme court found that the aggregate-sentence limitation in
section 5-8-4(c)(2) applied regardless of whether the offenses
were committed at the same or different times.  In <u>Tucker</u>, 167
Ill. 2d at 433-34, 657 N.E.2d at 1011, the defendant was found
guilty of residential burglary, and the trial court sentenced him
to 30 years.  At that time, however, the defendant was already

subject to two consecutive maximum extended prison terms for Class X felonies arising from a different incident.

The defendant appealed, and the appellate court affirmed the defendant's conviction but modified his sentence to run concurrently with his two previously imposed sentences, finding that section 5-8-4(c)(2) prohibited the imposition of consecutive sentences that exceed the sum of the maximum extended terms authorized for the two most serious felonies involved. Tucker, 167 Ill. 2d at 433, 657 N.E.2d at 1011. The State appealed, and the supreme court affirmed the appellate court, holding:

> "a defendant sentenced to consecutive prison
> terms under section 5-8-4(b) *** may not be
> sentenced to consecutive sentences that ex-
> ceed the sum of the maximum extended terms
> authorized for the two most serious felonies
> involved, whether those felonies are part of
> the same or separate occurrences." Tucker,
> 167 Ill. 2d at 438-39, 657 N.E.2d at 1013.

Similarly, several appellate courts have concluded that under section 5-8-4(c)(2), the aggregate of consecutive sentences cannot exceed the sum of the maximum terms authorized under section 5-8-2 for the two most serious felonies. In People v. Woods, 131 Ill. App. 3d 51, 55, 475 N.E.2d 589, 592 (1985), the defendant pleaded guilty to seven Class X felonies and four Class 1 felonies, and the maximum he could receive for a Class X felony

- 7 -

pursuant to section 5-8-2 of the Unified Code was 60 years.  The
trial court concluded, therefore, that under section 5-8-4(c)(2),
the aggregate of consecutive sentences that could be imposed on
the defendant could not exceed 120 years, which was the sum of
the maximum terms authorized under section 5-8-2 for the two most
serious felonies involved.  <u>Woods</u>, 131 Ill. App. 3d at 55, 475
N.E.2d at 592.  The defendant appealed, arguing that (1) the
trial court was only authorized to sentence him to a maximum of
60 years' imprisonment under 5-8-4(c)(2), and (2) he was not
eligible for an extended-term sentence, and therefore, the
extended-term sentences authorized by section 5-8-2 could not be
used in calculating the aggregate of consecutive sentences
allowed by section 5-8-4(c)(2).  The appellate court disagreed
with the defendant's interpretation of section 5-8-4(c)(2),
stating that section 5-8-2 is merely a measuring statute for
section 5-8-4(c)(2).  <u>Woods</u>, 131 Ill. App. 3d at 55, 475 N.E.2d
at 592; see also <u>People v. Beck</u>, 190 Ill. App. 3d 748, 546 N.E.2d
1127 (1989); <u>People v. Myrieckes</u>, 315 Ill. App. 3d 478, 734
N.E.2d 188 (2000).

    In <u>Beck</u>, 190 Ill. App. 3d at 763-64, 546 N.E.2d at
1137, the defendant presented the same argument put forth in
<u>Woods</u>.  The defendant, a minor, argued that because he was not
eligible for an extended-term sentence because of his youth, the
court could not use the term set forth in the extended-term
statute to calculate the length of his consecutive sentences.
The court rejected that argument, reasoning that the requirements

- 8 -

for consecutive sentences are stated in section 5-8-4 of the
Unified Code and not in section 5-8-2, the extended-term statute.
Beck, 190 Ill. App. 3d at 763, 546 N.E.2d at 1137.  Nothing in
section 5-8-4 precludes a minor from receiving consecutive
sentences.  Beck, 190 Ill. App. 3d at 763-64, 546 N.E.2d at 1137.
The court found Woods to be persuasive authority in concluding
that section 5-8-2 was merely a measuring statute for section 5-
8-4(c)(2).  Beck, 190 Ill. App. 3d at 764, 546 N.E.2d at 1137.

  The same conclusion was reached in Myrieckes, 315 Ill.
App. 3d at 481-82, 734 N.E.2d at 191-92, where the defendant
argued that section 5-8-2 provides for an extended term for a
Class X felony only if section 5-5-3.2(b) factors in aggravation
are present.  No factors in aggravation were present.  As such,
the defendant argued that the maximum term he was eligible for
under section 5-8-2 was the nonextended term of 30 years.
Therefore, the defendant reasoned, the 80-year sentence he
received exceeded the 60-year sum of the terms authorized for the
two most serious felonies involved.  Myrieckes, 315 Ill. App. 3d
at 481-82, 734 N.E.2d at 192.  The court disagreed with the
defendant's interpretation of the statute.  The court explained,
"[t]he plain language of section 5-8-4(c)(2) refers to the
'maximum terms authorized' by section 5-8-2, not to the maximum
terms for which a particular defendant is eligible."  (Emphasis
in original.)  Myrieckes, 315 Ill. App. 3d at 482, 734 N.E.2d at
192.  Therefore, the court found that the maximum term authorized
under section 5-8-2 was 120 years and the defendant's sentence

- 9 -

was within that range. <u>Myrieckes</u>, 315 Ill. App. 3d at 481-82,
734 N.E.2d at 192.

In the present case, defendant urges this court not to
follow <u>Woods</u>, <u>Beck</u>, and <u>Myrieckes</u>, contending that they are
inconsistent with <u>People v. Palmer</u>, 148 Ill. 2d 70, 592 N.E.2d
940 (1992), and <u>People v. Pastewski</u>, 164 Ill. 2d 189, 647 N.E.2d
278 (1995). We find <u>Palmer</u> and <u>Pastewski</u> factually inapplicable
to the case at bar.

In <u>Palmer</u>, the issue presented was whether natural life
was a permissible maximum sentence for an insanity acquittee
pursuant to section 5-2-4(b) (Ill. Rev. Stat. 1987, ch. 38, par.
1005-2-4(b), now 730 ILCS 5/5-2-4(b) (West 2002)). <u>Palmer</u>, 148
Ill. 2d at 82, 592 N.E.2d at 945. Under section 5-2-4(b), a
court is required to set the maximum period of commitment for a
defendant subject to involuntary admission that does

> "not exceed the maximum length of time that
> the defendant would have been required to
> serve, less credit for good behavior, before
> becoming eligible for release had he been
> convicted of and received the maximum sen-
> tence for the most serious crime for which he
> has been acquitted by reason of insanity."
> 730 ILCS 5/5-2-4(b) (West 2002).

The supreme court stated that a defendant could be committed for
the maximum period available under section 5-8-1. <u>Palmer</u>, 148
Ill. 2d at 86, 592 N.E.2d at 947. However, for a defendant to be

- 10 -

committed under the extended-term statute, section 5-8-2(a), the
trial court must determine that the statutory requirements of
that section are met.  Palmer, 148 Ill. 2d at 86-87, 592 N.E.2d
at 947.  Section 5-8-2(a) precludes an extended-term sentence
absent the presence of aggravating factors listed in section 5-5-
3.2(b).  Palmer, 148 Ill. 2d at 87, 592 N.E.2d at 947; 730 ILCS
5/5-8-2(a) (West 1996).  Section 5-5-3.2(b)(2) provides that an
extended term may be imposed "[w]hen a defendant is convicted of
any felony and the court finds that the offense was accompanied
by exceptionally brutal or heinous behavior indicative of wanton
cruelty."  730 ILCS 5/5-5-3.2(b)(2) (West 2002).  The supreme
court found, by definition, that an insanity acquittee is not
capable of wanton cruelty.  Palmer, 148 Ill. 2d at 92, 592 N.E.2d
at 950. Therefore, because the statutory requirements of section
5-8-2(a) cannot be met, an insanity acquittee may not be sen-
tenced for a period of commitment by reference to the extended-
term statute.  See Palmer, 148 Ill. 2d at 88, 592 N.E.2d at 948.

        However, recently the supreme court refused to construe
Palmer this broadly--as forbidding the extended-term statute from
ever being used in determining the maximum period of commitment
for an insanity acquittee.  Pastewski, 164 Ill. 2d at 195, 647
N.E.2d at 282.  Section 5-5-3.2(b)(1) allows the imposition of an
extended-term sentence on a felon upon a finding of the existence
of an aggravating factor, such as a felon, who, within a speci-
fied period of time, has been convicted of committing a felony of
the same or greater class.  730 ILCS 5/5-5-3.2(b)(1) (West 2002).

- 11 -

The court reasoned that this provision depended upon wholly objective, historical criteria and did not make reference to a defendant's mental state or intent. Pastewski, 164 Ill. 2d at 198, 647 N.E.2d at 283. The insanity acquittee was, therefore, properly committed to an extended term.

In contrast, the present case involved neither an insanity acquittee nor a determination that factors in aggravation set forth in paragraph (b) of section 5-5-3.2 (730 ILCS 5/5-5-3.2(b) (West 2002)) were found to be present. Moreover, an insanity acquittee found to be subject to involuntary admission or in need of mental-health services on an inpatient basis is to be committed to the Department of Mental Health and Developmental Disabilities for an indefinite period of time. The Unified Code provides, in relevant part, that the commitment cannot exceed the maximum length of time he would have received had he been convicted of and received the maximum sentence for the most serious crime for which he had been acquitted by reason of insanity. 730 ILCS 5/5-5-3.2(b) (West 2002). In determining the maximum length of time to commit a defendant, Pastewski noted that the defendant's prior criminal record would have qualified him for an extended-term sentence under section 5-5-3.2(b)(1). Pastewski, 164 Ill. 2d at 191, 647 N.E.2d at 280. Therefore, the court relied on that portion of the extended-term statute in determining the maximum period of commitment.

The case sub judice involved consecutive sentences and the aggregate sentence restriction or cap in section 5-8-4(c)(2).

- 12 -

730 ILCS 5/5-8-4(c)(2) (West 1996).  Therefore, the trial court relied on that portion of the extended-term statute only to determine the maximum aggregate consecutive sentences to impose. Holmes received all Class X convictions.  The court sentenced Holmes pursuant to section 5-8-1 and did not impose any extended-term sentences.  Therefore, the court did not have to consider any aggravating factors.  Because the court ordered the sentences to run consecutively, pursuant to section 5-8-4(c)(2), however, the aggregate amount of those sentences could not exceed 120 years, the maximum amount allowable for the two most serious offenses as forth in section 5-8-2.  Holmes received 110 years, well within the permissible range.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH, J., with KNECHT, P.J., and McCULLOUGH, J., concurring.

*page 77*

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

98477

October 6, 2004

Mr. Martin J. Ryan
Assistant Appellate Defender
400 South Ninth Street, S#102
P. O. Box 5750
Springfield, IL 62705-5750

No.  98477 - People State of Illinois, respondent, v. Gregory
            Holmes, petitioner.  Leave to appeal, Appellate
            Court, Fourth District.

The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on October 28, 2004.

*page 78*

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

**William K. Suter**
Clerk of the Court
(202) 479-3011

April 18, 2005

Mr. Greigory Holmes
Prisoner ID K-04785
PO Box 711
Menard, IL  62259

   Re:  Greigory Holmes
      v. Illinois
      No. 04-8717

Dear Mr. Holmes:

  The Court today entered the following order in the above-entitled case:

  The petition for a writ of certiorari is denied.

      Sincerely,

      *William K Suter*

      **William K. Suter**, Clerk

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

The People of The State of Illinois    )

     Plaintiff,    )

     vs.    )    No. 97-CF-1130

Greigory Holmes    ,    )

     Defendant(s)    )

## MOTION FOR APPOINTMENT OF COUNSEL

1. I, Greigory Holmes    , declare that I am the
plaintiff in the above-entitled case. I further state that I am
unable to afford the services of an attorney. I hereby request
the court to appoint counsel to represent me in this case.
Should the court grant the motion, I agree to provide for payment
of attorney fees out of any recovery I might obtain in this case.

2. In support of my motion, I declare that I have made the
following attempts to retain counsel to represent me in this
lawsuit:

Jenner & Block LLP ONE IBM Plaza Chicago, Illinois
60611 / Katten Muchin & Zavis 525 West Monroe Steet Chicago Illinois 606.
Geisler, Grary F. Geisler Law Offices 241 S Main St
62525, P.O. Box 1547 IL 62525 / Baker & Mckenzie Law
One Prudential Plaza 130 East Randolph Steet Chicago Illinois 60
Latham & Watkins; Hopkins & Sutter, Sonnenschein Nath & Rosenth

3. In further support of my motion, I declare that (check
appropriate answer):

_____  I am not currently represented (and have not
been represented previously) by an attorney
appointed by this court in this or any other
civil or criminal proceeding before this
court.

_____  I am currently (or previously have been)
represented by counsel appointed by this
court in the proceeding(s) described on the
attached page.

4.   In further support of my motion, I declare that (check appropriate answer):

__X__         I have attached an original application to proceed in forma pauperis detailing my financial status.

__X__         I already have been granted leave to proceed in forma pauperis; my previously filed application to proceed in forma pauperis is a true and correct representation of my current financial status.

_____         I previously filed an application to proceed in forma pauperis; however, my financial status has since changed.  Attached is an amended application to proceed in forma pauperis that reflects my current financial status.

5.   I declare under penalty of perjury that the foregoing is true and correct.

_____
Movant's Signature

_P.O. Box 711_____
Street Address

_Menard  IL, 62259_____
City/State/Zip Code

Date:   _Apr 4, 2006_____

10/94

2

# Menard Correctional Center
## Trust Fund
### Inmate Transaction Statement

REPORT CRITERIA  -  Date: 09/01/2005 thru End;    Inmate: K04785;    Active Status Only ? : No;    Print
Restrictions ? : Yes;    Transaction Type: All Transaction Types;    Print Furloughs / Restitutions ? : Yes;    Include
Inmate Totals ? : Yes;    Print Balance Errors Only ? : No

**Inmate: K04785 Holmes, Gregory L.**                    **Housing Unit: MEN-N -01-09**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|------|--------|------------------|-------|-------------|-------------|--------|---------|
| | | | | | **Beginning Balance:** | | 88.78 |
| 09/01/05 | Disbursements | 88 K04785 2 Tapes | 244394 | Chk #69624 | 88203585, Music By Mail ,   Inv. Date: 09/01/2005 | -22.50 | 66.28 |
| 09/08/05 | Payroll | 20 Payroll Adjustment | 251159 | | P/R month of 08/2005 | 4.08 | 70.36 |
| 09/08/05 | Point of Sale | 60 Commissary | 251746 | 534756 | Commissary | -70.16 | .20 |
| 09/12/05 | Mail Room | 01 MO/Checks (Not Held) | 255223 | 08-295678374 | Holmes, Pearlie | 10.00 | 10.20 |
| 09/16/05 | Point of Sale | 60 Commissary | 259793 | 537694 | Commissary | -8.97 | 1.23 |
| 09/16/05 | Mail Room | 01 MO/Checks (Not Held) | 259202 | 08-295679349 | Holmes, Pearlie | 10.00 | 11.23 |
| 09/21/05 | Mail Room | 01 MO/Checks (Not Held) | 264223 | 08-355440223 | Holmes, Pearlie | 20.00 | 31.23 |
| 09/23/05 | Point of Sale | 60 Commissary | 266779 | 539241 | Commissary | -29.30 | 1.93 |
| 09/26/05 | Disbursements | 80 Postage | 269359 | Chk #70084 | 122026, DOC: 523 Fund Reimburs, Inv. Date: 09/14/2005 | -.49 | 1.44 |
| 09/27/05 | Mail Room | 01 MO/Checks (Not Held) | 270245 | 4660192793 | Holmes, Pearlie | 10.00 | 11.44 |
| 10/06/05 | Point of Sale | 60 Commissary | 279793 | 540694 | Commissary | -9.68 | 1.76 |
| 10/07/05 | Payroll | 20 Payroll Adjustment | 280159 | | P/R month of 09/2005 | 7.89 | 9.65 |
| 10/11/05 | Mail Room | 01 MO/Checks (Not Held) | 284223 | 08-355549772 | Holmes, Pearlie | 10.00 | 19.65 |
| 10/13/05 | Disbursements | 80 Postage | 286359 | Chk #70351 | 124300, DOC: 523 Fund Reimburs, Inv. Date: 10/03/2005 | -.98 | 18.67 |
| 10/13/05 | Disbursements | 80 Postage | 286359 | Chk #70351 | 123409, DOC: 523 Fund Reimburs, Inv. Date: 09/26/2005 | -.37 | 18.30 |
| 10/13/05 | Point of Sale | 60 Commissary | 286767 | 542495 | Commissary | -18.12 | .18 |
| 10/14/05 | Disbursements | 84 Library | 287359 | Chk #70386 | 124120, DOC - Library Copies,   Inv. Date: 10/03/2005 | -.05 | .13 |
| 10/18/05 | Mail Room | 01 MO/Checks (Not Held) | 291223 | 4660192955 | Holmes, Pearlie | 15.00 | 15.13 |
| 10/20/05 | Point of Sale | 60 Commissary | 293767 | 544609 | Commissary | -13.97 | 1.16 |
| 10/24/05 | Mail Room | 01 MO/Checks (Not Held) | 297223 | 4711830417 | Holmes, Pearlie | 10.00 | 11.16 |
| 10/26/05 | Disbursements | 80 Postage | 299359 | Chk #70569 | 126932, DOC: 523 Fund Reimburs, Inv. Date: 10/25/2005 | -.49 | 10.67 |
| 11/01/05 | Mail Room | 01 MO/Checks (Not Held) | 305223 | 4711830472 | Holmes, Pearlie | 10.00 | 20.67 |
| 11/03/05 | Point of Sale | 60 Commissary | 307779 | 546355 | Commissary | -20.08 | .59 |
| 11/07/05 | Payroll | 20 Payroll Adjustment | 311169 | | P/R month of 10/2005 | 8.00 | 8.59 |
| 11/08/05 | Mail Room | 01 MO/Checks (Not Held) | 312223 | 4737960402 | Holmes, Pearlie | 30.00 | 38.59 |
| 11/10/05 | Point of Sale | 60 Commissary | 314749 | 548417 | Commissary | -38.11 | .48 |
| 11/17/05 | Mail Room | 01 MO/Checks (Not Held) | 321202 | 47379608925 | Holmes, Pearlie | 10.00 | 10.48 |
| 11/28/05 | Disbursements | 80 Postage | 332359 | Chk #71060 | 130181, DOC: 523 Fund Reimburs, Inv. Date: 11/21/2005 | -.83 | 9.65 |
| 11/29/05 | Mail Room | 01 MO/Checks (Not Held) | 333223 | 4737961074 | Holmes, Pearlie | 10.00 | 19.65 |
| 12/07/05 | Payroll | 20 Payroll Adjustment | 341169 | | P/R month of 11/2005 | 8.00 | 27.65 |
| 12/13/05 | Disbursements | 80 Postage | 347359 | Chk #71412 | 131665, DOC: 523 Fund Reimburs, Inv. Date: 12/05/2005 | -.37 | 27.28 |
| 12/16/05 | Point of Sale | 60 Commissary | 350767 | 554435 | Commissary | -12.85 | 14.43 |
| 12/19/05 | Point of Sale | 60 Commissary | 353749 | 554799 | Commissary | 12.85 | 27.28 |
| 12/19/05 | Mail Room | 01 MO/Checks (Not Held) | 353202 | 47563080070 | Holmes, Pearlie | 20.00 | 47.28 |
| 12/19/05 | Mail Room | 01 MO/Checks (Not Held) | 353202 | 47118308710 | Holmes, Pearlie | 10.00 | 57.28 |
| 01/10/06 | Payroll | 20 Payroll Adjustment | 010169 | | P/R month of 12/2005 | 2.18 | 59.46 |
| 01/11/06 | Mail Room | 01 MO/Checks (Not Held) | 011245 | 4756308232 | Holmes, Pearlie | 10.00 | 69.46 |
| 01/11/06 | Mail Room | 01 MO/Checks (Not Held) | 011245 | 4756308233 | Holmes, Pearlie | 5.00 | 74.46 |
| 01/18/06 | Mail Room | 01 MO/Checks (Not Held) | 018245 | 08710700962 | Bridges, Doris | 20.00 | 94.46 |
| 01/18/06 | Mail Room | 01 MO/Checks (Not Held) | 018245 | 4758715514 | Holmes, Pearlie | 15.00 | 109.46 |
| 01/20/06 | Mail Room | 01 MO/Checks (Not Held) | 020245 | 4758715580 | Holmes, Pearlie | 10.00 | 119.46 |